# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 18-CV-00899-REB-GPG

**TED V. CLARK,**

Plaintiff,

v.

**HOME DEPOT, U.S.A., INC., a foreign corporation doing business as The Home Depot Store # 1513**

Defendant.

---

## AFFIDAVIT OF GREGORY A. GOLD, ESQ.

---

I, Gregory A. Gold, one of the attorneys for Plaintiff Ted V. Clark in the above captioned matter, being first duly sworn upon oath, state that:

1. Mr. Clark retained two law firms, the Gold Law Firm LLC and Law Offices of William G. Argeros, to represent him in this matter. In November 2018, in anticipation of expert disclosures, our firms contacted an expert referral company, The Expert Institute, to assist us in identifying possible retail industry safety experts. My firm had previously retained qualified experts through The Expert Institute in several cases.

2. The Expert Institute represents on its website that:

    - Our team of experienced researchers ... works with you to develop a framework for our search.



- We comb internal databases and perform custom outreach to locate the most suitable expects for your case, while also applying unique vetting procedures for every candidate.
- You are presented with **conflict-free expert witnesses** for review and selection …

3. The Expert Institute provided my firm with the resumes for several possible experts. I and my co-counsel arranged a telephone interview with a Safety and Operational Expert residing in Colorado, Tim Wiese.

4. The Expert Institute provided my firm with a resume for Mr. Wiese which reflected that Tim Weise has been employed in the retail sales industry for more than twenty years. The resume reflected that Mr. Wiese's Professional Experience included employment at Target Corporation, Dicks Sporting Goods, Republic Services, and JCPenney's. A copy of Mr. Wiese's resume, as provided to my office in late November 2018 by the Expert Institute, is attached as **Exhibit C to DOC 42.**

5. On February 6, 2019, Plaintiff timely disclosed his three retained experts, including Mr. Wiese. Mr. Wiese issued a report in which he opined, based upon his training and experience, Home Depot should not have allowed a manual pallet jack to be stored or kept in the walkway of a retail store. A copy of that report was attached as **Exhibit 3 to DOC 41.** A copy of Mr. Wiese's resume, as produced to my office by The Expert Institute, was produced with Plaintiff's disclosure of experts.

6. The next day, February 7, 2019, Home Depot's counsel, contacted undersigned counsel via email stating: "I now need to take all of your expert's depositions ASAP. So that I can make a determination about experts needed by Home Depot, and then find them

2

and get them materials and information and get reports from them ... Since our deadline to designate is March 22, I need the depositions no later than the week of February 25."

7. My office complied with counsel's email and scheduled each of the three retained experts for deposition during the week of February 25, 2019.

8. On February 18, 2019, Mr. Smith's associate notified my office, for the first time, that Mr. Smith was scheduled to be in trial during the week of February 25 and that the depositions would need to be rescheduled. We agreed but told Home Depot's counsel that if he wished to reschedule the depositions his office was authorized to contact Plaintiff's experts regarding scheduling.

9. At no time was Home Depot's counsel authorized by myself, my co-counsel or any representative of our offices, either expressly or implicitly, to contact the employer of any of Plaintiff's retained experts – only the expert/expert's scheduler concerning date, time, location and pre-payment requirements.

10. Mr. Smith's associate contacted my office on March 11, 2019 requesting that the depositions be scheduled on March 27-29, 2019. Pursuant to my instructions, Dorothy Dean responded, agreeing to hold available dates and again advising Home Depot's counsel that "this time around, we are going to let you contact our retained experts directly concerning scheduling of their depositions – as to date, time, location, and prepayment requirements. We have told our experts to expect contact from your office and to cooperate re scheduling."

11. The next day, Tuesday, March 12, 2019, Home Depot's counsel sent an email in which he questioned whether the resume produced with Plaintiff's expert disclosure was a

3

"misrepresentation" as to Mr. Wiese's current place of employment; counsel sent a follow up email the next day.

12. Upon receipt of the March 12, 2019 email, Ms. Dean immediately tried to reach Mr. Wiese but was unable to do so and left a voice mail message asking that he call our office concerning his resume. Mr. Wiese returned that telephone call on the morning of March 13, 2019. Ms. Dean described the resume that we had been provided by The Expert Institute. Mr. Wiese advised that this resume was not up to date. Mr. Wiese stated that he had provided a copy of his current resume to The Expert Institute and assumed that the current version had been forwarded to my office. Ms. Dean requested a copy of the resume from Mr. Wiese. That resume was provided to my office late on March 12, 2019 and was disclosed on the morning of March 14, 2019 within 72 hours of being notified that the resume might not be up to date. The one day delay in disclosure was due to the "bomb cyclone" event which hit Denver on March 13, 2019. A copy of that resume is attached as **Exhibit E to DOC. 42** and reflects that on the date of disclosure Mr. Wiese was employed by Floor and Décor.

13. Despite Home Depot's suggestion to the contrary, I believe the disclosure of the out of date resume was an inadvertent error on the part of my office and Mr. Wiese. There was no intentional misrepresentation by either my office or Mr. Wiese.

## DEFENSE COUNSEL'S EX-PARTE CONTACT WITH FLOOR AND DÉCOR'S CORPORATE COUNSEL

14. To the best of my knowledge, on or shortly before March 14, 2019 (I do not know the exact date of my own personal knowledge), Home Depot's counsel made one or more ex-parte contacts with the corporate counsel's office for Floor and Decor, Mr. Wiese's employer, at its main corporate office in Atlanta, Georgia. Home Depot's counsel did not seek, and was not given permission by Plaintiff's counsel or Mr. Wiese, to make any contact with Mr. Wiese's employer.

15. On the afternoon of March 14, 2019, I received a telephone call from Mr. Wiese. He told me that he just had received a telephone call from two of the associate counsel (Matthew Remm and Heather Habereet, I am not certain of the spelling of this individual's last name) in the Floor and Décor General Counsel's office. Mr. Wiese stated he was asked about his retention and disclosure as an expert in this case and was asked whether he was being scheduled to give a deposition. Mr. Wiese stated he had confirmed that he was a disclosed expert and that he was being scheduled to give a deposition.

16. Mr. Wiese sent an email to Ms. Dean on the evening of March 14, 2019, a copy of which was attached as **Exhibit 2 to DOC. 41,** indicating that "[i]ts with regret that I will need to withdraw my services in the Clark v. Home Depot case." Receipt of this email on the evening of March 14, 2019, was Plaintiff's counsels' first notice of defense counsel's ex-parte contact with the employer for Plaintiff's retained expert.

17. The next day, Friday March 15, 2019, Ms. Dean and I spoke with Mr. Wiese concerning the email received the previous evening. Mr. Wiese disclosed that he had

5

been instructed to withdraw in an email. I asked Mr. Wiese to contact counsel for Floor and Décor and ask that they contact me. Shortly afterward, I received a telephone call from Floor and Décor's Associate Counsel Matthew Remm. Mr. Remm stated that Mr. Smith had contacted his office. Mr. Remm stated that Mr. Smith had asked whether Floor and Décor knew that Mr. Wiese was acting as an expert in the *Clark* case and also asked, whether Mr. Wiese was acting on behalf of Floor and Décor in appearing as an expert in the *Clark* case.

### PLAINTIFF'S COUNSEL HAD A REASONABLE BASIS TO BELIEVE THAT DEFENSE COUNSEL'S CONDUCT VIOLATED THE COLORADO RULES OF PROFESSIONAL CONDUCT

18. Following the above telephone call with Mr. Wiese, I contacted two Colorado ethics experts, Gary B. Blum, Esq and James S. Sudler, Esq., to determine whether defense counsel's contact(s) with Mr. Wiese's employer violated the Colorado Rules of Professional Conduct.

19. As I stated during the telephone Discovery Conference on March 19, 2019, prior to the Conference, Home Depot's counsel would not tell me what he had said to Floor and Décor's counsel. However, I knew the facts as above stated and had consulted with two Colorado ethics experts, both of whom had opined that defense counsel's conduct violated one or more ethical proscriptions. These consultations gave Plaintiff's counsel a good faith basis to raise the issue with the Court during the Discovery Conference.

20. During the Conference, Home Depot's counsel confirmed that he had contacted corporate counsel for Floor and Décor. He represented that his purpose in making this call was to inquire as to whether Floor and Décor would accept a subpoena for Mr. Wiese's employment and training files. Mr. Remm did not mention anything about a

6

subpoena in his telephone call with me and Ms. Dean on March 19, 2019.[1] Again, I do not know for sure what may have been said during the telephone call or calls from Home Depot's counsel to Floor and Décor's corporate counsel except that the question was raised, per Mr. Remm's statement to me, as to whether Mr. Wiese was acting on behalf of Floor and Décor in testifying against Home Depot in this case. These were the facts I knew at the time of the Discovery Conference and were the basis for Plaintiff's counsel bringing the matter to the Court's attention and for citing the Court to the *Sanderson v. Boddie-Noell Enterprises, Inc.* and *Carlson v. Monaco Coach Corp.*, in support of the position that defense counsel's contacts with Mr. Wiese's employer were improper.

21. On March 19, 2019, shortly after the Discovery Dispute telephone conference, I received a telephone call from Mr. Wiese. In that telephone call he told me that he had been **terminated** by two senior Floor and Décor managers from his job at Floor and Décor. I was first informed of this termination approximately one hour after the conclusion of the telephone Conference with the Court. We advised the Court of Mr. Wiese's termination in our Brief. **[DOC. 41].**

22. Because the Court ordered simultaneous briefing of the ex-parte contact issue, we did not know what facts defense counsel might present to the Court. As we prepared Plaintiff's Brief, my office asked Home Depot's counsel to provide us with a copy of any Affidavit or statement of the facts that he intended to submit, but he declined. **See**

---

[1] In a follow up call with Mr. Remm on March 26, 2019, when asked by Ms. Dean whether Mr. Smith had inquired about serving a subpoena, Mr. Remm stated that "no subpoena was referenced."

7

email, dated March 28, 2019, attached as Exhibit G to DOC 42.[2] It was not until we received Defendant's Brief, and defense counsel's Affidavit, that we were supplied with Home Depot's version of the communication with Floor and Décor.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

---

[2] The Court expressed concern regarding my office's email that we had decided to "file a Motion for Sanctions with Judge Brimmer tomorrow rather than filing briefing with Magistrate Gallagher." The reference to Judge Brimmer, rather than Judge Blackburn, was an inadvertent mistake; we merely meant we were considering filing a Motion for Sanctions with the District Court. Ms. Dean was instructed to write this email because it was not clear following the Discovery Conference whether defense counsel might take the position that this Court did not have the authority to consider the sanction issue or the Court itself might find it did not have the authority to consider the issue without a formal Motion. Plaintiff's counsel brought this email exchange to the Court's attention and attached a copy of the email to Plaintiff's Brief. **See Exhibit 1 to DOC. 41.** As noted in Footnote 1 to Plaintiff's Brief, once Plaintiff received defense counsel's response, Plaintiff believed that both parties had agreed the issue of sanctions was properly before the Court notwithstanding the fact that a formal motion for sanctions had not been filed and Plaintiff's Brief was filed with this Court. The email did not represent and was not intended to constitute a threat, but rather, was simply an effort to confer so as to avoid the possible need to file an additional briefing at a later date.

FURTHER AFFIANT SAYETH NAUGHT

_____
Gregory A. Gold

STATE OF Colorado )
                 )
COUNTY OF Arapahoe )

Subscribed and sworn to before me this 18th day of April, 2019, by Gregory A. Gold.

_____
NOTARY PUBLIC

> LAURA GHIA
> NOTARY PUBLIC
> STATE OF COLORADO
> NOTARY ID 20184018080
> MY COMMISSION EXPIRES APRIL 26, 2020

My commission expires:

April 26, 2020

9