IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-CV-00899-REB-GPG

**TED V. CLARK,**

Plaintiff,

v.

**HOME DEPOT, U.S.A., INC., a foreign corporation doing business as The Home Depot Store # 1513**

Defendant.

### AFFIDAVIT OF JAMES S. SUDLER, ESQ.

I, James Sudler, Esq. being first duly sworn upon oath, state that:

1. **Engagement:** I was engaged by Attorney Greg Gold, of The Gold Law Firm, on March 15, 2019 to express my opinion on matters involving contact by Defense Counsel with the employer of an expert witness in *Clark v. Home Depot, U.S.A, Inc.*, Civil Action No. 18-CV-00899-REB-GPG, in the United States District Court for the District of Colorado. I was referred to Mr. Gold by Gary B. Blum, Esq. Mr. Gold asked me to research and to provide a written opinion as to whether defense counsel had violated the Colorado Rules of Professional Conduct ("Colo. R.P.C.") by contacting the employer of a retained and disclosed expert witness, Mr. Wiese.

2. **Qualifications:**

A. I have a B.A in Political Science from the University of California at Berkeley earned in 1973. I have a J.D. from Denver University College of Law earned in 1976. I have a



master's degree in Sociology from State University of New York at Binghamton earned in 1992.

B.  From June 1992 until July 2016, I was employed by the Colorado Supreme Court Office of Attorney Regulation Counsel (earlier known as Disciplinary Counsel and referred to as "OARC"). I served there in various capacities, but mostly as a trial lawyer conducting investigations of alleged misconduct by lawyers and prosecuting cases in front of the Presiding Disciplinary Judge and that office's predecessor. Almost all cases I handled initially focused on determining what a lawyer had done, and whether he or she had violated the Colo. R.P.C.s. They then focused on what disposition OARC should make. I also handled some cases concerning the admissions of lawyers to the practice of law in Colorado, and I investigated and handled cases of alleged misconduct by judges.

C.  As a trial lawyer in OARC, after completing investigations I could recommend dismissal, diversion or a formal proceeding against a lawyer. Making such recommendations required knowing the Colo. R.P.C.s and being able to apply them. Formal proceedings generally are cases in which OARC seeks to act against a lawyer's license to practice law that could result in discipline from suspension to disbarment. I estimate that I conducted about 1,500 investigations, and at least 150 formal proceedings or trials while I served in OARC. I briefed and argued two lawyer discipline cases in front of the Colorado Supreme Court.

D. Among the investigations and trials in which I participated was a matter in Phoenix in which the Arizona Supreme Court appointed John S. Gleason - who was at that time the Regulation Counsel for Colorado - to investigate and, if necessary, prosecute the former Maricopa County Attorney and two of his deputies for prosecutorial misconduct. Mr. Gleason asked me to assist in that matter, and we conducted a months-long investigation, eventually leading to a 26-day trial in Phoenix. That case resulted in the disbarment of the former Maricopa County Attorney, Andrew Thomas, his deputy, Lisa Aubuchon, and the suspension of another deputy, Rachel Alexander.

E. When I left the OARC in July 2016, I was the head of the Trial Division supervising the attorneys and investigators who were assigned the more serious cases of alleged attorney misconduct. I served in that role after returning from Arizona at the end of 2011 until I retired from that office in 2016.

F. Before joining OARC, as an attorney I headed the Special Prosecutions Unit of the Colorado Attorney General's Office; I was also in private practice at the firm then-known as Rothgerber, Appel, Powers and Johnson; I served as In House Counsel at the Gates Rubber Company; and, I was a Deputy District Attorney in the Denver District Attorney's Office.

G. From 1989 until 1992 I took a pause from the practice of law and pursued academic studies. I achieved a master's degree in Sociology from Binghamton University formerly known as State University of New York at Binghamton.

3

H. Since about 1997, I have taught numerous continuing legal education courses covering all areas of practicing law pursuant to the Colorado Rules of Professional Conduct. I would estimate that I have taught around 200 to 300 courses to lawyers about their ethical responsibilities including areas of competence, communication, conflicts of interest, diligence, honesty, and trust account management.

I. I have taught Professional Responsibility at Denver University Sturm College of Law on three occasions and assisted teaching that course on another occasion. I currently serve on the Standing Rules Committee of the Colorado Supreme Court which reviews the Rules of Professional Conduct and makes recommendations to the Court about proposed changes or revisions. I am a member of the Colorado Bar Association Ethics Committee.

J. Twice I have taught undergraduate courses at the University of Colorado at Boulder on the American West most recently in the fall of 2016.

K. I have served as a consulting expert witness on three occasions before this engagement. One matter was settled by the parties and I did not testify. Another matter is pending, and I have not testified. The third was a consulting expert arrangement and did not, as far as I am aware involve litigation. Other than those, I have not served as either a testifying or consulting expert.

**3. Research Conducted Between March 15, 2019 and the March 19, 2019 Discovery Conference:** I understand that a telephone discovery conference was conducted by the Court on March 19, 2019. Between the time that I was retained by Mr. Gold and the Discovery Conference, I conducted research to provide Mr. Gold with a preliminary opinion as whether Defense Counsel's contact with Mr. Wiese's employer violated the

Colo. R.P.C. Prior to the Discovery Conference I advised Mr. Gold that this issue appeared to be one of first impression in Colorado and the Tenth Circuit and provided Mr. Gold with my citations to cases in several other jurisdictions, including *Sanderson v. Boddie-Noell Enterprises, Inc.* and *Carlson v. Monaco Coach Corp.*, which supported the position that defense counsel's contacts with Mr. Wiese's employer, as I understood them, were improper.

4. **Documents Reviewed:** Prior to Plaintiff's submission of his Brief in Response to Court's Order Re: Unauthorized, Ex-parte Contact by Defense Counsel ("Plaintiff's Brief"), I reviewed two draft copies of a document that became Plaintiff's Brief and provided Mr. Gold's office with my comments. In the same time frame, I was provided with a summary of the facts relating to defense counsel's contact with the employer of the expert as those facts are set forth in the Affidavit of Gregory A. Gold, Esq. and with a copy of the email from Tim Wiese to Dorothy Dean, Esq, dated March 14, 2019. Since the Court entered its Order Regarding Discovery Dispute Surrounding Expert Tim Wiese, I have reviewed a copy of Plaintiff's Brief, Defendant's Brief and the Court's Order dated April 9, 2019.

5. **Opinion Letter:** Prior to the filing of Plaintiff's Brief with this Court, I provided a written report to Mr. Gold, dated March 27, 2019, containing the research which was incorporated into Plaintiff's Brief. In that report, I provided the opinion that defense counsel's conduct as conveyed to me had violated several of the Colorado Rules of Professional Conduct ("Colo. R.P.C."), including R.P.C. 3.4(a), 3.4(c), 8.4(a), and 8.4(d). I again advised Mr. Gold that this issue appeared to be one of first impression in Colorado and the Tenth Circuit and provided Mr. Gold with my analysis with citation to

5

cases in several other jurisdictions, including the *Sanderson v. Boddie-Noell Enterprises, Inc., Wellstar Health Sys. V. Kemp, Erickson v. Newmar Corp., Harlan v. Lewis*, and *Carlson v. Monaco Coach Corp.* cases, cited in Plaintiff's Brief.

6. **Discussion at Colorado Ethics Committee:** On March 16, 2019, I attended a meeting of the Ethics Committee of the Colorado Bar Association. At this meeting, I discussed with three colleagues the general issue of an opposing counsel's contact with an opposing party's expert witness, or the employer of an opposing party's expert witness. None of them had heard of a lawyer doing so, and one of them referred me to Colo. R.P.C. 3.4(a). I conveyed this information to Mr. Gold prior to his office's filing of Plaintiff's Brief.

FURTHER AFFIANT SAYETH NAUGHT

_____
James S. Sudler, Esq.

STATE OF Colorado )
                  )
COUNTY OF Arapahoe )

Subscribed and sworn to before me this 18th day of April, 2019, by James S. Sudler, Esq.

_____
NOTARY PUBLIC

LAURA GHIA
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20184018080
MY COMMISSION EXPIRES APRIL 26, 2020

My commission expires:

April 26, 2020